*BURKS, J.,
delivered the opinion of the court.
This.is.a writ of error to a judgment of the circuit court of Amherst county rendered in behalf of the defendant in an action of ejectment.
The plaintiffs in error here were the plaintiffs in the action below, and on the trial of the issue, in order to show title in themselves to the land in controversy, they offered to introduce in evidence to the jury the deed of J. P. Bell, S. R. Dawson, and J. J. Mahone, described as trustees of the Mu *573 tual building fund association of Lynch-burg, which deed purported to be attested by the president and secretary of said association, conveying to the plaintiffs the land claimed in the declaration, and, in connection with the deed, they also offered to introduce certain articles under which they claimed that the said association was a duly constituted corporation under the laws of this State. The defendant objected to the introduction of the deed and articles as evidence, and on his motion they were excluded from the jury. To this ruling of the court the plaintiffs excepted, and tendered their bill of exceptions, which was signed, sealed, and made a part of the record.
The rejection of these papers as evidence is the only error assigned. No reason for the rejection is stated in the bill of exceptions, but it is understood and has been so argued here, that the learned judge, who presided at the trial, based his ruling solely on the ground that the special statutes which authorized the self-incorporation of building fund associations by articles such as were offered in evidence had been repealed and superseded by other statutes of a more general character, which empower the courts to grant charters, and therefore that the Mutual building fund association of Lynch-burg, never having obtained a charter in *the mode prescribed by the statutes last mentioned, was never duly and legally incorporated.
If there has been any repeal of the special •statutes which have been adverted to, it was not a repeal in express terms, but by implication merely. The rules and principles which guide the courts when the question for determination is whether one statute has been impliedly repealed by another were considered by this court in Hogan v. Guigon, judge, 39 Gratt. 705. It is there said, that the repeal of a statute by implication is not favored by the courts; for ordinarily where a repeal is intended by the legislature it is declared in express terms. The presumption is always against the intention to repeal where express terms are not used. The rule is stated by Chief Justice Marshall to be, that a repeal by implication ought not to be presumed unless from the repugnance of the provisions the inference be necessary and unavoidable; (Harford v. United States, 8 Cranch. 109); and by Judge Story, that it is not sufficient to establish that subsequent laws cover some or even all of the cases provided for by it; for they may be merely affirmative, or cumulative, or auxiliary; but there must be a positive repugnancy between the provisions of the new laws and those of the old. Wood v. United States, 16 Peters’ R. 343, 363. It is laid down in McCoole v. Smith, 1 Black U. S. R. 459, 470, that to justify the presumption of intention to repeal one statute by another, the two statutes must be irreconcilable; and in the more recent case of Arthur v. Homer, 96 U. S. (6 Otto) 137, that to induce a repeal of a statute by the implication of inconsistency of a later statute, there must be such a positive repugnancy between the two statutes that they cannot stand together.
There may also be acts plainly intended to embrace and include the whole legislation on the subjects to *which they refer, and to be substituted wholly for the former acts on the same subjects; and in such cases, the provisions of the former laws on the same subject, although not expressly embraced in the subsequent acts, are impliedly repealed. Fox’s, adm’rs v. Commonwealth, 16 Gratt. 1; United States v. Tynen, 11 Wall. U. S. R. 88.
The method of incorporation pursued by the Mutual building fund association of Lynchburg was first authorized by an acfof the legislature, passed May 39, 1853. That act provided, among other things, that persons might associate and become an incorporated company, for the purpose of accumulating a fund to enable its respective members to purchase houses and lots, erect buildings, remove encumbrances from real estate, and for other purposes enumerated, by signing articles of association of a particular description, and causing the same, when verified in the mode prescribed, to be recorded in the court of the county or corporation in which the association should transact its business. See Acts of 1853, ch. 101.
On the 3d day of March, 1854, (Acts 1853-4, ch. 46), an act was passed empowering the circuit and county courts, in their discretion, to grant charters for mining and manufacturing purposes. This was the first of a series of acts, extending down to the present time, investing the courts with jurisdiction to grant charters of incorporation.
On the 11th day of March, 1856, (Acts 1855-6, ch. 36), an act was passed amending the act of March 3, 1854, so as to extend its provisions to hotel, cemetery, gas-light, water, springs, and telegraph companies, orphan asylums, hospitals, academies, library and building associations.
The acts of March 3, 1854, and March 11, 1856, were amended March 15, 1858, so as to forbid county *courts to grant corporate powers, thus leaving the jurisdiction for that purpose exclusively in the circuit courts. Acts 1857-8, ch. 70.
These several acts, commencing with the act of March 3, 1854, were embodied by the compiler in the Code of 1860, ch. 65, § 4 et seq., and on the 39th of January, 1867, sections 4, 5, and 7 of chapter 65 (Code of 1860) were amended, and the provisions of section 4 extended so as to authorize the circuit courts to grant charters of incorporation “for the conduct of any enterprise or business which may be lawfully conducted by private individuals,” &c. Acts 1866-7, ch. 139.
By an act approved March 30, 1871, (Acts 1870-71. ch. 377), sections 4, 5, 6, 7. 8, 9, and 10 of chapter 65 of the Code of 1860, and all acts and parts of acts amendatory thereof, were repealed, and other provisions substituted; but the main features of the former acts were preserved. The circuit courts were empowered, in their discretion, on proper certificates, to grant, charters to “joint stock companies for the conduct of any enterprise *574 or business which may be lawfully conducted by an individual or by a body politic or corporate. except to a railroad, or turnpike, or canal, beyond the limits of the county wherein the principal office of said company is to be located, or to establish a bank of circulation.” This act, or the first section of it, was afterwards amended — March 6, 1873 (Acts 1872-3, ch. 113); but this amendatory act, which was passed after the Mutual building fund association had, if it ever did, become a corporation, and other subsequent amenda-tory acts need not be examined, as they do not affect the question under consideration.
A careful examination of the series of acts conferring on the courts jurisdiction to grant corporate powers, commencing with the act of March 3, 1854, fails to disclose a legislative intent to repeal the act of 1852 *(already cited), providing a special mode for the incorporation'of building fund associations. It is true, that under these acts such associations might have been incorporated by the courts at any time since January 29, 1867, and even since March 11, 1856, if the term “building associations,” used in the act of that date are equivalent to of include, as is probably the case, associations such as are provided for by the act of 1852. But it does not by any means follow, that an existing method of incorporation is designed to be abrogated merely because another is provided. There is nothing in the nature of the acts referred to or in the language in which they are expressed, to raise the presumption of an intention to repeal the act of 1852. They are not inconsistent with or repugnant to the latter act, but entirely compatible with it. They are, in respect to it. cumulative — auxiliary. They may well stand with it; and, if so, they must so stand.
But if the presumption of an intention to repeal could be fairly drawn from the statutes which have been referred to, when considered with reference to the act of 1852 alone, such presumption is plainly repelled by legislation not yet adverted to.
During the whole period of the legislation regulating the incorporation of companies for various purposes by the courts, the legislature has recognized the act of 1852, as an act in force, by amending it in many particulars from time to time, the last amendatory act fo which our attention has been called having been approved March 31, 1871, (Acts of 1870-71, ch. 295), the title of which expressly refers to the act of May 29, 1852. by its title.
The amendments were made January 19, 1853; February 10, 1853; March 14. 1853; February 9, 1856; January 31, 1867; March 31, 1871. See Acts *1852-3, p. 303; Acts 1855-6. ch. 119; Acts 1866-7, ch. 138; Acts 1870-1, ch. 295.
And it is a striking fact, that the amendment of January 31,1867, was made the second day after the passage of the act already cited (Acts 1866-7, ch. 129), amending the code in relation to the incorporation of companies by the court, and that the amendment of March 31,1871 (Acts 1870-1, ch. 295), was made on the very next day after the passage of the general act before cited (Acts 1870-1, ch. 277), which was substituted for the former laws investing courts with jurisdiction to grant charters.
So it distinctly appears that so far from an intention being shown to repeal the act of 1852, the intention not to repeal but to keep it in force as modified by amendments has been plainly manifested over and over again down to a very late period.
And since the foregoing was written, our attention has been called to an act (not cited in argument) approved February 27, 1880, amending the law in regard to charters granted by the courts, in which it is expressly provided, that nothing contained in the section amended “shall be held or construed as denying to any building fund association organized and incorporated under the act of May twenty-ninth, eighteen hundred and fifty-two, and amendatory acts, all the rights, powers and privileges and franchises granted and vested under said acts to such associations.” Acts 1879-80, ch. 110.
Can there be any doubt then, that the Mutual building fund association of Lynch-burg is a legally constituted -corporation? We think not.
It was said in argument that most of these associations in the cities and towns of the State have been organized and have been transacting business as corporations under the act of 1852 and the acts amenda-tory *thereof. If we were compelled, as we are not, to hold, that they have mistaken the law, great inconvenience and mischief would result.
Several cases connected with these associations have been before this court. In some of them it appears, that the associations were acting as corporations under the act of 1852 and the amendatory acts, b.ut the validity of their incorporation seems to have been conceded or at least not questioned. Christian v. Cabell, 22 Gratt. 82; White v. Mechanics’ Building Fund Association, Id. 233; Edelin v. Pascoe, Id. 826; Winchester Building Fund Association v. Gilbert, 23 Gratt. 787.
For the reasons stated, the court is of opinion, that the circuit court erred in ex'cluding from the jury the deed and articles of association offered in evidence by the plaintiffs. The judgment must therefore, be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.
The judgment was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said circuit court committed an error on the trial of this cause in excluding from the jury the deed and articles of association offered as evidenceby the plaintiffs andsetoutinthe bill of exceptions; therefore, it is considered and ordered, that, for the error aforesaid, the said judgment be reversed and annulled, and the verdict of the jury set aside, and that the *575 plaintiffs in error recover against the defendant in error their costs by them expended in the prosecution of the writ of error and supersedeas aforesaid here; and this cause is remanded *to the said circuit court for a new trial of the issue therein. And upon such trial, if the plaintiffs shall again offer as evidence the deed and articles of association aforesaid, the same shall be permitted to go to the jury; which is ordered to be certified to the said circuit court of Amherst county.
Judgment reversed.